## BURKE *v.* FLOOD *et al.*

(*Superior Court of California.    Chicago Legal News, September 4, 1880.*)

SUIT TO COMPEL CORPORATION TO ACCOUNT—BY WHOM BROUGHT—Although as a general rule, a suit to compel the ministerial officers of a private corporation to account for a breach of official duty or misapplication of funds, should be brought in the name of the corporation, yet where it is shown that the directors of the corporation refuse to prosecute, or the corporation is still under the control of those who should be defendants in the suit, the stockholders will be permitted to bring an action in their own names, making the corporation a party defendant.

Courts of equity will, at the instance of a stockholder, control a corporation and its officers, and restrain them from doing acts even within the scope of the corporate authority, if such acts when done would amount to a breach of their trust.

SULLIVAN, J.    This is a bill in equity, filed by John H. Burke, a stockholder in the Consolidated Virginia Mining Company, on behalf of himself and such other stockholders in said corporation as may become parties, against James C. Flood and the representatives of Wm. S. O'Brien, charging said Flood and O'Brien with the fraudulent misappropriation of stocks belonging to said corporation.    The corporation is also made a defendant.

The complaint alleges that in April, 1872, the defendants Flood and O'Brien were partners of J. W. Mackay and J. G. Fair, and the said partnership purchased from one Geo. W. Kenney twelve and one twentieth feet of mining ground, the purchase being made through Solomon Heydenfeldt, in whose name the deed was taken.

It is claimed that the consideration paid was a sum of $1,250, and that said purchase was made by said partnership with the intent of selling the land to the corporation.

It is stated also that Flood and O'Brien, at the time of the combination formed for the purchase and sale of the land aforesaid, were trustees of said corporation, and that from that time up to the commencement of this action the other directors of said corporation were controlled by and in the interest of the defendants Flood and O'Brien.

The consideration paid by the company is alleged to be 120½ shares of the capital stock of the corporation, the market value of which at the date of the transaction was $18,000.    The plaintiff thus claims that said partners bought said property for $1,250 and sold it to the corporation, of which two of them were direc-

tors, at an advance of $16,750.  That such action on the part of
Flood and O'Brien was in violation of their trust as directors,
and a fraud on the corporation defendant and its stockholders.
The highest market value of the said 120½ shares of stock, which
was reached in January, 1875, is stated to be $1,398,080.  The
dividends declared on the same, up to the commencement of this
action, are claimed to be upwards of $600,000.  The plaintiff de-
mands that said defendants account to the said corporation for
all the said stock and dividends, and that they be allowed merely
the money actually expended in the purchase of said mining
ground.

Three other similar circumstances are set out in the complaint,
and plaintiff avers that the aggregate amount realized by the de-
fendants on the stock issued to them at the time of the several
sales to the company is $10,498,068, which sum the plaintiff prays
the defendant be compelled to account for to the company.

It is alleged that demand was made on the corporation to bring
this action, and that the corporation refused to sue; and it is
claimed that such refusal is due to the corporate control exer-
cised by the defendants over the present directors of the corpo-
ration.

The complaint is demurred to by all the defendants, including
the corporation, on numerous grounds; but the grounds more
especially relied on are the following: 1, That the complaint does
not state facts sufficient for cause of action.  2, That said com-
plaint shows no facts entitling the plaintiff to the relief, or author-
izing him to maintain the action.

The general rule governing actions of this character is that a
suit brought for the purpose of compelling the ministerial officers
of a private corporation to account for a breach of official duty
or misapplication of corporate funds, should be brought in the
name of the corporation, and that under ordinary circumstances
it cannot be brought in the name of the stockholders, or in the
name of some of them.  Angell and Ames on Corporations, sec-
tion 312, and the authorities there cited.  That where it is claimed
that the directors of a corporation refuse to prosecute by collu-
sion with those who have made themselves answerable by their
negligence or fraud, or where the corporation is still under the
control of those who must be defendants in a suit, the stockhold-
ers, who are the real parties in interest, would be permitted to

file a bill in their own names, making the corporation party defendant. The reason given for this rule is that otherwise a minority of the corporation would be completely at the hands of a corporate majority; and official misconduct, malfeasance, and fraud would be encouraged and protected by the forms of law. But it was well said in the case of *Bobinson* v. *Smith*, that courts of equity never permitted a wrong to go unredressed merely for the sake of form. The same doctrine is laid down in *Hichings* v. *Congrieve*, 4 Russell, 462.

In the case of *Hazard* v. *Durand*, 11 R. I., 206, the court says the jurisdiction does not appear to be so firmly settled and defined in England as in this country; but we do not believe that any English judge has ever decided that a president or director who fraudulently diverts or embezzles corporate funds cannot be sued in equity by a stockholder, when the corporation wilfully neglects or refuses to bring the suit. Indeed, to hold that a corporation could gratuitously condone or release such a fraud by anything short of unanimous consent would be monstrous. It would be in effect to hold that a president or director who can control a majority vote in the corporation may rob or despoil with impunity. There are numerous American cases which hold that in such circumstances a stockholder may sue for himself and other stockholders, making the corporation a co-defendant with the guilty parties. See *Verplank* v. *Mercantile Insurance Co.*, 1 Edward Ch. Rep., 84; *Cunningham* v. *Peel*, 5 Id., 607; *Hodges* v. *New England Screw Co.*, 1 R. I., 212; Spearing's Appeal, Penn. State Rep., 1.

Some authorities controvert the doctrine here laid down, notably so in the case of the *United States* v. *The Union Pacific Railroad*, 98 U. S., 599. These cases lay down the doctrine that while a stockholder may maintain an action individually against the guilty parties, he has no right to represent the corporation, and to bring it unwillingly into court to conduct a litigation for the purpose of recovering its property from its faithless officers. How this relief could be effectually administered without an accounting I cannot readily see. At all events, the vast preponderance of authority, of fundamental equity jurisprudence sustains the rule above laid down.

The doctrine laid down in *Robinson* v. *Smith*, cited above, is approved in the case of *Neal* v. *Hill*, 16 Cal., 151, and *Wright* v.

*The Orville Mining Co.*, 39 Cal. In the latter case, Wallace, justice, uses this language: "But the courts of equity, in dealing with the relations between a corporation and its officers on the one hand, and the stockholders on the other, in the management of its corporate officers, look beyond the mere observance of the forms of law, and inquire if the authority has been exercised in good faith—exercised to promote the interest of the stockholders. The corporate authority is considered to have been conferred by the stockholders on the trust and confidence that it will be exerted at least with a view to advance the interests of the stockholders, and not used with a purpose to injure or destroy that interest. And it is settled that courts of equity in this country will, at the instance of a stockholder, control a corporation and its officers, and restrain them from doing acts even within the scope of the corporate authority, if such acts were done would, under the particular circumstances, amount to a breach of the very trust upon which we have seen the authority itself has been conferred. And upon the same principle the court will, even after such an act has been done, relieve injured stockholders from loss, if in the meantime no superior equity has intervened, nor the rights of innocent third parties are attacked." See also, *Rogers* v. *Lafayette Agricultural Works*, 37 Ind., 305; *Cogswell* v. *Bull*, 39 Cal., 324; *Parrot* v. *Byers*, 40 Cal., 625; *Greeves* v. *Gouge*, 56 Howard's Practice, 272. The plaintiff has standing, therefore, and has the capacity to maintain an action in a proper case.

Does this complaint show a case in which the defendants should be called upon to answer? In the light of the decisions in California and elsewhere, I think it does. *San Diego* v. *San Diego and Los Angelos Railroad*, 44 Cal., 112; *Wilbur* v. *Lynde*, 49 Cal., 292; *Farmers and Mechanics Bank of Los Angelos* v. *Downey*, 53 Cal., 466.

Defendants claim that the bill shows an acquiescence in, and ratification of, the alleged fraudulent acts. I do not think that such appears on the face of the complaint, and the court is not allowed otherwise to presume it.

In the separate demurrer of the executors of O'Brien, it is urged that plaintiff cannot maintain the action, because an allegation is made of presentment of the claim to the executor of O'Brien, deceased.

Section 1493 of the Code of Civil Procedure is relied on in support of this position. That section refers by its terms to claims arising on contract, and does not extend to claims founded on tort. It does not embrace the right to file a bill in equity to obtain an accounting. *Lathrop* v. *Bampton*, 31 Cal., 24; see also, *Gunther* v. *Janes*, 9 Cal., 643.

From these views it follows, in my judgment, that the demurrer should be overruled, and it is so ordered.

Twenty days will be allowed to answer.