SCHLEMMER *v.* ROSSLER ET AL.

PLEADING.—*Complaint to Set Aside Judgment.—Excusable Neglect.*—A complaint to set aside a judgment rendered by default, alleging circumstances preventing the applicant from making his defence, must show that such circumstances existed, not only at, but prior to, the term at which the judgment complained of was rendered.

SAME.—*Principal and Agent.*—Where such complaint alleges also, that, because of such circumstances, the applicant had entrusted the presenta-

Schlemmer *v.* Rossler *et al.*

tion of such defence to one who had failed to present it, there should also be an allegation, that such person had agreed and undertaken to present such defence.

SAME.—*Married Woman Holding Real Estate by Virtue of Previous Marriage.—Descents.—Injunction.—Execution.—Sheriff's Sale.*—The complaint in such case also alleged, that the applicant was a married woman, holding real estate descended to her by virtue of her marriage with a deceased former husband, that the judgment complained of had been rendered on a promissory note executed by her, and that such real estate had been levied on and offered for sale by virtue of an execution issued on such judgment ; wherefore she demanded that such levy and sale be enjoined.

*Held,* on demurrer, that, under section 18, 1 R. S. 1876, p. 411, of the law of descents, such real estate can not be sold on execution, and that the complaint is sufficient.

From the Clark Circuit Court.

*J. B. Merriwether,* for appellant.

*J. H. Stotsenburg* and *S. S. Johnson,* for appellees.

WORDEN, J.—Complaint by the appellant, against the appellees, to set aside a judgment rendered by default, and to enjoin the levy of an execution upon certain real estate.

Demurrer to the complaint for want of sufficient facts sustained, and exception.

Final judgment for defendants.

The facts alleged in the complaint are, in substance, that, on the 7th day of September, 1875, Rossler recovered a judgment in the Clark Circuit Court, by default, against the appellant, Magdalena Schlemmer, Charles Schlemmer, Leonard Carl, Jr., and Henry Sittle, for a sum of over four hundred dollars, upon a promissory note executed by all the defendants in the judgment, payable to said Charles Rossler; that the appellant, both at the time of the execution of the note and the rendition of the judgment, was the wife of said Charles Schlemmer ; that she executed the note at the request, demand and command of her said husband. " That the plaintiff was prevented from attending at any time on the sitting of the September term, 1875, of the Clark Circuit Court,

and said judgment by default was taken against her through her mistake, inadvertence, surprise and excusable neglect, as follows :

" 1st.   This plaintiff was at said time, and at the time said judgment was rendered against her, the mother of an infant child nine months old, which was at the time very ill, afflicted with disease of the bowels and affection of the lungs; that said child was too sick to be taken from home without great danger to its health and life, and was too sick for this plaintiff to leave to the care of others; and in the care and trouble about her child's condition, and in the efforts to restore its health, and fears of the ultimate results of the sickness, the plaintiff's rights and defence in said action were neglected, forgotten and lost sight of; and plaintiff omitted to look after her defence herself, and besides, in consequence of said sickness of her said child, she could not, without neglect and danger to it, take the time to look after her said defence in said action, and hence did not give it any attention, except as follows :

" 2d.   Under the circumstances above stated, she trusted to her husband to make her defence, and he did not do so ; but she trusted to him because she was not in a condition to do otherwise, and would not have done so, if she had been differently situated.

" This plaintiff did not certainly know that a judgment was rendered against her in said action until last Saturday, December 11th, 1875, when the sheriff presented the execution in said action on said judgment, and she was informed that the judgment was rendered at the September term of this court; that the plaintiff had, at the said September term throughout, and has now, a full and complete defence to said action in which said judgment was rendered, in this, to wit: at the time the note sued on in said action was signed by plaintiff, and at all times since, the plaintiff was a married woman, the wife of Charles

Schlemmer, to whom she was married in the year 1861."

The complaint goes on to allege, that the sheriff is about to levy upon and sell certain real estate, described, to make the amount due upon the execution, which would cast a cloud upon her title, and she prays that he may be enjoined. Her title to the property is set forth as follows:

"That she became the owner thereof in this way: Before her marriage with her present husband, she was the wife and then the widow of Ernest Remus, who died May 3d, 1860, the owner of certain real estate; that, in the division of said real estate among his heirs, that above described was set apart to her as his widow, as aforesaid, and inherited by her as such widow; that she had and has children by said Remus now living."

The judgment against the appellant is as valid and binding as if she had been sole at the time of the execution of the note upon which it was rendered.

The defence of coverture must be made, or it will be in no manner available. *Landers* v. *Douglas*, 46 Ind. 522; *Burk* v. *Hill*, 55 Ind. 419.

With regard to that portion of the complaint which seeks relief from the judgment, we are of opinion that the facts stated do not entitle the appellant to the relief. It does not appear how long the action had been pending in which the judgment was rendered, before the judgment was taken. It must be assumed, that the process was served at least ten days before the term of the court at which the judgment was rendered. It does not appear by the complaint that the appellant's child was sick before the term of the court at which the judgment was rendered. She had, therefore, the whole ten days before the commencement of the term, and before the sickness of her child, in which to make preparation for her defence. This was ample time in which to employ counsel and instruct him as to her defence. Her defence was of

such a character as would seem to have precluded the
necessity of her personal attendance upon court. Her
coverture, it seems to us, could have been established by
other witnesses, without her evidence. At all events, it
does not appear that there would have been any necessity
for her attendance upon court, either as a witness or
otherwise. If her defence had been set up, and her per-
sonal presence had been necessary upon the trial, her ab-
sence on account of the sickness of her child might have
been ground for a continuance. But the defence was not
made, although there was ample time before the term of
court, and before the sickness of the appellant's child, to
prepare for it. We think this was inexcusable neglect.
It is alleged, that the appellant trusted to her husband to
make her defence, and that he did not do it; but it is not
alleged, that he undertook or promised to do it, or that
she was in any way misled by him in that respect.

We come to the other point in the case: Was the real
estate described liable to be sold on execution against the
appellant?

We think it clear enough, from the allegations of the
complaint, that the property came to the appellant by in-
heritance from her former husband, under sec. 17 of the
act regulating descents. 1 R. S. 1876, p. 408. It is al-
leged, that she inherited it as such widow. This pre-
cludes the idea that it came to her by any will of her
former husband. The 18th section of the act provides,
that, "If a widow shall marry a second or any subse-
quent time holding real estate in virtue of any previous
marriage, such widow may not, during such marriage,
with or without the assent of her husband, alienate such
real estate, and if, during such marriage, such widow
shall die, such real estate shall go to her children by the
marriage in virtue of which such real estate came to her,
if any there be."

The land descended to the appellant from her former
husband, and the fee vested in her. Section 18, above set

.out, contains a limitation upon the power of alienation, and furnishes a rule of descent in case such widow should die during a second or subsequent marriage, leaving children by the marriage in virtue of which the estate came to her. See *Philpot* v. *Webb*, 20 Ind. 509; *Jackson* v. *Finch*, 27 Ind. 316.

If property thus inherited by a widow from her former husband can be sold on execution against her during her second or subsequent marriage, then one of two things must follow : First, the purchaser must acquire the unconditional title in fee, which would frustrate the purpose of the statute providing, that, in case she dies during the second or subsequent marriage, the property shall go to her children by the marriage in virtue of which it came to her, if any there be; or, second, the purchaser would acquire the fee conditionally, that is, if the widow survived the second or subsequent marriage; but, if she died during such marriage, the property would pass to the heirs named in the section of the statute above quoted. Both of these results are objectionable, and a construction that would lead to either ought not to be adopted, if it can be reasonably avoided. The first would contravene the evident purpose of the Legislature in enacting the 18th section, which was, amongst other things, to so limit the power of alienation during a second or subsequent marriage, as that the property, upon the death of the widow during such marriage, should go to her children by the marriage in virtue of which it came to her. The second is objectionable on account of the uncertainty as to the extent of title that would pass by the sale and purchase. In one event, the purchaser would acquire the fee, and in the other an estate for the life of the widow only. If the widow survived the second or subsequent marriage, the purchaser would have the fee; but, if she died during such marriage, leaving children by the marriage in virtue of which the property came to her, they would take it. This uncertainty would strongly

tend to embarrass sales on execution, and prevent property from bringing any thing like its full value, although the purchaser might acquire the fee.

In the case of *Vinnedge* v. *Shaffer*, 35 Ind. 341, this court held, that a woman could not, with her husband, execute a valid mortgage, during her second or subsequent marriage, upon property held by her in virtue of a previous marriage. It was said in that case, in speaking of section 18 of the statute: "This statute ties up the hands of a woman during a second or subsequent marriage, and restrains her, during such marriage, from alienating real estate received by her in virtue of a former marriage. The restraint upon alienation, by the terms of the statute, is as absolute where there are no children of the marriage in virtue of which she received the property, as where there are. The object of the statute seems to be two-fold, first, to protect a woman who has thus received real estate by virtue of a former marriage from improvident and injudicious alienations thereof during a second or subsequent marriage, and second, to preserve the property for the children of the marriage in virtue of which she received it, where there are such children, in case of her death during such second or subsequent marriage." See, also, *Bowers* v. *Van Winkle*, 41 Ind. 432.

If one of the objects of the statute was to protect a woman who has thus received real estate by virtue of a former marriage from improvident and injudicious alienations thereof during a second or subsequent marriage, that purpose might easily be thwarted, if, during such second or subsequent marriage, the land could be sold upon execution against her. Her husband, or other persons, might induce her to execute a note, or otherwise to contract a debt, and let judgment go upon it, and let the land be sold. What she can not do directly, she ought not to be permitted to do indirectly.

We are of opinion, that the spirit and purpose of the statute not only prevent an alienation of such land by

the woman, with or without the consent of the husband, during such second or subsequent marriage, but also prevent the sale of the same on execution against her during the same period.

The complaint was good for an injunction to restrain the levy of the execution upon the land, and the sale thereof, during the existence of the appellant's present marriage.

The judgment below is reversed, with costs, and the cause remanded for further proceedings, in accordance with this opinion.

Note.—Howk, J., having been of counsel in the cause, was absent when it was considered.